OPINION
{¶ 1} Defendant-appellant Brian Eakin appeals from the judgment of conviction and sentence of the Licking County Court of Common Pleas entered upon his guilty plea to one count of murder and two counts of attempted felonious assault. This matter is before this court pursuant to an Anders brief filed by appellant's appointed appellate counsel.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On February 15, 2001, defendant-appellant Brian Eakin [hereinafter appellant] was indicted on one count of murder, in violation of R.C. 2903.02(B), and two counts of attempted felonious assault, in violation of R.C. 2903.11(A)(1) and R.C. 2923.02(A). On February 20, 2001, Mr. Eakin was arraigned and entered pleas of not guilty to each of the indicted charges.
 {¶ 3} The charges stemmed from an incident in which appellant and a co-defendant, Chad Meisenhelder, made a "bet" that Meisenhelder would attack three individuals. After the bet had been made, Meisenhelder attacked the three individuals. Appellant joined in the fight and kicked one of the individuals in the head. Appellant admitted to kicking one of the victims, but could not say which victim he kicked. One of the victims, Robert (Bobby) Wilcox, died as a result of the attack. The other two victims were knocked unconscious as a result of the attack.
 {¶ 4} A change of plea hearing and sentencing hearing was held on July 10, 2001. Appellant appeared before the trial court and entered a plea of guilty to each of the charges in the indictment. After accepting the pleas, the trial court proceeded to sentence appellant. The trial court sentenced appellant to fifteen years to life on the count of murder and four years of incarceration on both counts of felonious assault. Each of the sentences were to be served concurrently to each other.
 {¶ 5} Appellant subsequently filed a request for a delayed appeal. By Judgment Entry filed October 9, 2001, this court granted appellant leave to appeal. Appellate counsel was appointed for appellant.
 {¶ 6} On October 30, 2001, appellant's appointed appellate counsel, Andrew T. Sanderson, filed a Motion to Withdraw as Counsel and an Anders Brief. See Anders v. California (1967), 386 U.S. 738. In theAnders Brief, appellate counsel indicated that in his opinion, there were no potentially meritorious issues for appellate review. However, pursuant to Anders, appellate counsel's Anders Brief identified two potential assignments of error:
 {¶ 7} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN ACCEPTING THE GUILTY PLEA OF THE DEFENDANT-APPELLANT.
 {¶ 8} "II. THE TRIAL COURT COMMITTED HARMFUL ERROR IN SENTENCING THE DEFENDANT-APPELLANT."
 {¶ 9} Attorney Sanderson provided a copy of his Anders Brief and Motion to Withdraw as Counsel to appellant. Appellant was advised of his right to file a pro se brief on his own behalf. Thereafter, appellant filed a Motion to Appoint New Counsel. This Court denied appellant's motion. Subsequently, appellant appealed this Court's denial of his motion to appoint new counsel to the Ohio Supreme Court. This Court issued a stay pending the outcome of the Supreme Court appeal. The Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal. Thereafter, this Court lifted its stay and the appeal proceeded.
 {¶ 10} Although appellant was given an opportunity to submit a prose brief, appellant failed to do so. In appellant's motion to appoint new counsel, appellant identified two issues that appellant felt his appointed appellate counsel had failed to identify. By Judgment Entry, this court held that those two issues would be addressed as appellant's assignments of error. Those assignments of error are as follows:
 {¶ 11} "I. THE TRIAL COURT VIOLATED CRIMINAL RULE 11 WHEN IT FAILED TO DETERMINE IF APPELLANT TRULY UNDERSTOOD THE NATURE OF THE CHARGES AGAINST HIM.
 {¶ 12} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN ACCEPTING DEFENDANT'S GUILTY PLEA WHILE APPELLANT WAS UNDER THE INFLUENCE OF A PSYCHOTROPIC MEDICATION WITHOUT TALKING WITH [APPELLANT'S] MEDICAL DOCTOR TO SEE IF DEFENDANT COULD FULLY COMPREHEND THE TRIAL COURT'S PROCEEDINGS." MEMORANDUM OF SUPPORT TO APPELLANT'S MOTION FOR APPOINTMENT OF NEW COUNSEL, PAGE 2.
 {¶ 13} Appellant's counsel has stated that there are no potentially meritorious issues to be presented and motioned this court to withdraw as counsel. Anders established five criteria which must be met before a motion to withdraw by appellate counsel may be granted:
 {¶ 14} "The five criteria are: a showing that appellant's counsel thoroughly reviewed the transcript and record in the case before determining the appeal to be frivolous; a showing that a motion to withdraw has been filed by appellant's counsel; the existence of a brief filed by appellant's counsel; the existence of a brief filed by appellant's counsel showing any potential assignments of error that can be argued on appeal; a showing that appellant's counsel provided a copy of the brief which was filed to the appellant; and a showing that appellant's counsel provided appellant adequate opportunity to file a pro se brief raising any additional assignments of error appellant believes should be addressed." See State v. Martin
(Feb. 25, 1999), Lucas County App. No. L92-239, unreported.
 {¶ 15} This court then has an independent duty to review the complete record and determine whether there is any arguable merit to the assignments of error presented by appellate counsel or appellant and to determine whether there are any arguably meritorious issues apparent from the record. Anders, supra; State v. Miliner (Dec. 21, 2001), Montgomery App. No. 18785, unreported, 2001 WL 163331.
 I {¶ 16} Appellate counsel's first assignment of error and appellant's first and second pro se assignments of error each concern whether the trial court erred in accepting appellant's guilty plea. Specifically, appellate counsel raises a general, potential assignment of error as to whether the trial court erred in accepting appellant's plea of guilty. First, appellant contends that the trial court failed to determine if appellant understood the nature of the charges. Appellant argues that the trial court erred at the change of plea hearing when it asked appellant if he understood the nature of the three "charges" against him. Appellant argues that the trial court should have separated the charges and asked appellant if he understood the nature of the charge of murder. Then, after appellant had responded, appellant claims the trial court should have asked appellant if he understood the nature of the two charges of attempted felonious assault. Second, appellant argues that once the trial court became aware that appellant was taking an antidepressant medication, the trial court should not have accepted the guilty plea without first consulting with appellant's doctor.
 {¶ 17} We will first address appellant's contentions that appellant was not properly advised of the nature of the charges against him. Appellant relies upon State v. Blair (1998), 128 Ohio App.3d 435. In Blair, the appellant claimed that he did not understand the nature of the charges against him. The Blair court held that:
 {¶ 18} "Because there is nothing in this record to support a finding that Blair was ever advised, by anyone, of the nature of the charge of attempted rape — that is, what the state would have to prove to convict him — we agree with Blair that the trial court erred in accepting his plea. A defendant's mere affirmative response to the question whether he understands the nature of the charge against him, without more, is insufficient to support the necessary determination that he understands the nature of the charge against him."
 {¶ 19} When defendant enters a guilty plea in a criminal case, the plea must be made "knowingly, intelligently, and voluntarily." State v.Engle (1996), 74 Ohio St.3d 525, 527. A determination of whether a plea was knowing, intelligent, and voluntary is based upon a review of the record. State v. Spates (1992), 64 Ohio St.3d 269, 272.
 {¶ 20} Criminal Rule 11(C) sets forth the procedure a trial judge must follow when accepting a guilty plea to a felony offense. Subsection (C)(2)(a) requires the judge to address the defendant personally and to determine that the defendant is entering his plea voluntarily, with an understanding of the nature of the charge, the maximum penalty involved and, if applicable, that he is not eligible for probation.[1]
 {¶ 21} The requirement that the court personally address the defendant and determine that he understands the nature of the charge involves a subjective determination by the court that must be objectively supported by the record. The record must demonstrate that the defendant acquired an understanding of the nature of the charges against him, from whatever source, be it from the trial court itself, the prosecutor, or some other source, such that the trial court can determine that the defendant understands the charges to which he is pleading guilty.
 {¶ 22} The nature of the crime, also referred to as the nature of the charge, is a general knowledge of the crime. Knowledge of the nature of the crime or charge is more general than knowledge of the actual elements of the crime. In other words, although the defendant may not be able to outline each element of the crime, he knows the "circumstances of the crime." State v. Lane (Nov. 19, 1999), Ashtabula App. Nos. 97-A-0056, 97-A-0057, 97-A-0058. A familiarity with the facts alleged relating to each count of the crimes charged is enough to provide the defendant with knowledge of the nature of the crime. Ohio v. Elofskey
(May 6, 1994), Montgomery App. No. 13970, unreported.
 {¶ 23} When a defendant is represented by counsel, there is a presumption, however, that the defense counsel did inform the defendant of the nature of the charges: "even without such express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." State v. Carter
(1979), 60 Ohio St.2d 34, 38, (quoting Henderson v. Morgan (1976),426 U.S. 637). However, the burden upon the trial court becomes greater if there is an indication that the defendant is confused. State v.Swift (1993), 86 Ohio App.3d 407, 413.
 {¶ 24} A trial court must substantially comply with Crim.R. 11(C). State v. Johnson (1988), 40 Ohio St.3d 130, 133. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." State v. Nero (1990), 56 Ohio St.3d 106, 108
(citing State v. Stewart (1977), 51 Ohio St.2d 86; State v. Carter
(1979), 60 Ohio St.2d 34, 38, certiorari denied (1980), 445 U.S. 953. In reviewing the record in this case as a whole, we find that appellant was sufficiently apprised of the nature of the offenses.
 {¶ 25} Appellant was represented by counsel. At no point in his plea hearing or his sentencing did it appear that appellant was confused. The trial court had the State provide a statement of the facts, as alleged by the State. Appellant was then asked if he agreed with the facts as presented by the Prosecutor and still wanted to plead guilty. Appellant, through counsel, added two points to the statement of facts but continued to desire the court to accept his guilty pleas. The trial court asked appellant if he had "discussed the matter of pleas of guilty, all possible defenses, all affirmative defense [sic] and the facts in this case and the present charges fully and completely with your attorney." Transcript of Proceedings at page 12. Appellant responded "Yes, Your Honor." Id. Appellant's attorney did not express any concern regarding appellant's understanding of the nature of the offense.
 {¶ 26} An examination of the trial court transcript demonstrates that appellant fully understood the nature of the charges against him. Nothing in the record indicates that appellant was unaware of the charges against him. On the contrary, in the dialogue between the judge and appellant during the hearing, before the trial court accepted appellant's pleas, appellant was advised of the charges pending and the facts upon which the charges were based. We find that the totality of the circumstances are such that the trial court was warranted in determining that the defendant understood the charges. See State v. Rainey (1982),3 Ohio App.3d 441.
 {¶ 27} Appellant also argues that the trial court should have contacted appellant's doctor to determine if appellant could truly understand the trial court proceedings since appellant was under the influence of antidepressants. We disagree.
 {¶ 28} At the change of plea hearing, the following exchange occurred:
 {¶ 29} "Q. Are you in good health mentally and physically?
 {¶ 30} "A. Yes, sir.
 {¶ 31} "Q. Are you under the care of a doctor for any reason?
 {¶ 32} "A. Yes, sir.
 {¶ 33} "Q. And what are you under the care of a doctor for?
 {¶ 34} "A. I'm on antidepressant.
 {¶ 35} "Q. All right. Who is your doctor?
 {¶ 36} "A. Dr. Reiter (phonetic). Dr. Reiter.
 {¶ 37} "Q. All right. And what type of antidepressants are you on now?
 {¶ 38} "A. Amitriptyline.
 {¶ 39} "Q. Okay. Have you taken the Amitriptyline within the last 24 hours?
 {¶ 40} "A. Yes.
 {¶ 41} "Q. All right. When you take the Amitriptyline does it cause you to not understand what is going on around you?
 {¶ 42} "A. No, sir.
 {¶ 43} "THE COURT: Miss Burkett, you have had a chance to review this matter with your client this morning, does he to the best of your knowledge know, understand and appreciate the nature of these proceedings?
 {¶ 44} "MS. BURKETT: I believe he does, Your Honor.
 {¶ 45} "THE COURT: Thank you.
 {¶ 46} "BY THE COURT:
 {¶ 47} "Q. Mr. Eakin, one more question along these lines. Are you now under the influence of any type of medication, alcohol or drugs to the extent that you do not know, understand or appreciate the nature of these proceedings?
 {¶ 48} "A. No, Your Honor." Transcript of Proceedings, pages 14-15.
 {¶ 49} There was no requirement that the trial court contact appellant's doctor and verify whether the antidepressant medication interfered with appellant's ability to understand the proceedings. The trial court did, however, have a duty to ensure that appellant's plea was knowing, intelligent and voluntary. A defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. State v. Nero, supra
(citing Stewart, supra, 51 Ohio St.2d at 93; Crim.R. 52(A)). The test is whether the plea would have otherwise been made. Id. A determination of whether a plea is knowing, intelligent and voluntary is based upon a review of the record. State v. Spates (1992), 64 Ohio St.3d 269, 272.
 {¶ 50} In this case, the record reflects that the trial court questioned appellant about the medication and specifically asked appellant if the medication rendered him unable to understand the proceedings. Appellant clearly answered that it did not. The trial court asked appellant's counsel if appellant was able to understand the proceedings. Counsel responded that she believed appellant understood and appreciated the nature of the proceedings. A review of the entire transcript of the change of plea hearing reflects that appellant was asked a detailed set of questions concerning his change of plea and the consequences of his plea. Appellant answered each question asked of him clearly and never indicated that he did not understand the questions. Appellant also indicated that he fully understood the rights he was waiving. There is simply no indication that the medication interfered with his ability to make a knowing, intelligent and voluntary plea.
 {¶ 51} As to appellate counsel's general, potential assignment of error, we find that the trial court complied with Crim.R. 11(C)(2). The record reflects that the trial court ensured that appellant understood the nature of the charges, the maximum penalty and that probation was not available. The trial court informed appellant that upon accepting the plea, the trial court could proceed with judgment and sentence. The trial court also informed appellant of the rights he was waiving. Further, we find that the record demonstrates that the plea was made knowingly, intelligently and voluntarily. The trial court did not commit error in accepting appellant's guilty plea.
 II {¶ 52} In appellate counsel's second potential assignment of error, appellate counsel asserts that a criminal defendant has a right to appeal certain sentences imposed by a trial court. See R.C. 2953.08. However, appellate counsel concludes that the sentence imposed upon appellant presents no issue for appeal. We agree.
 {¶ 53} Appellant was sentenced to the minimum sentence available for murder. The sentences on the other two charges were ordered to be served concurrently to the sentence for murder. Upon independent review of the record, this court finds that there is no arguably meritorious issue as to the sentencing of appellant.
 {¶ 54} III
 {¶ 55} In conclusion, this Court has independently examined the entire record in this matter, including, but not limited to, the acceptance of appellant's plea and appellant's sentence, and we agree with the conclusion of appellant's appointed appellate counsel that there are no arguably meritorious issues or errors that occurred in this matter to be raised or decided on appeal. Further, this Court finds that Attorney Sanderson has complied with the procedures set forth in Anders
and hereby grants Attorney Sanderson's Motion to Withdraw as Counsel for appellant.
 {¶ 56} For these reasons, the judgment of conviction and sentence entered in the Ashland County Court of Common Pleas, Ashland County, Ohio, is hereby affirmed.
By Edwards, J., Hoffman, P.J. and Boggins, J. concur.
topic: Withdraw of counsel
[1] Criminal Rule 11(C)(2), which sets forth the duties imposed upon a trial court in accepting guilty or no contest pleas, provides in part:
 In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:
 (a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved and, if applicable, that he is not eligible for probation.
 (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.